THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY DAVISON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Schneier, J.), rendered August 6, 1985, convicting him of manslaughter in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements to law enforcement authorities.

Ordered that the judgment is affirmed.

In the early morning hours of November 16, 1982, the defendant and a longtime friend, Walter Kilson, were on a Brooklyn street where they became embroiled in an argument which escalated into a physical altercation and ultimately led to Kilson's death by stabbing. Several police officers responded to the scene of the incident where the victim was discovered, and two of these officers immediately followed up on a radio report informing them of an anonymous tip that an individual who had been involved in the incident was seated in a grey automobile parked in front of a church only 30 feet from the scene of the incident.

The officers approached the vicinity of the church, looking at the several cars parked in the area, when they observed the defendant seated in a blue automobile parked in front of the church. As the officers approached the vehicle with their hands on their guns, their attention was drawn to the window of an apartment building directly across the street, where they saw an individual tapping on the window and pointing in the direction of the vehicle. This pointing persisted as they informed the defendant of the stabbing and inquired as to whether he was aware of the incident or had any information relative thereto. The defendant denied any knowledge of the incident, and the officers asked if he would accompany them

to Kings County Hospital, where the victim had been taken and where they intended to conduct an identification procedure. The defendant voluntarily exited the vehicle, he was patted down, and was seated in the rear of the police car with one of the officers. The defendant was not handcuffed and did not speak during the 3- to 4-minute ride to the hospital.

Upon their arrival at the hospital, the defendant observed the stabbing victim being wheeled into the operating room and began to make inculpatory statements regarding that morning's events. The officers immediately advised the defendant of his *Miranda* rights, whereupon he elaborated on the earlier statements.

The defendant sought suppression of his statements and Criminal Term determined, after a hearing, that the defendant was arrested upon being transported to the hospital and that this arrest, not having been based upon probable cause, was unlawful. It determined that the statements were nevertheless admissible because of attenuation, i.e., that the viewing of the victim was a significant intervening event which removed the taint of the illegal arrest. Based upon our review of the record, we conclude that the police conduct was lawful and therefore do not address the merits of the remainder of the hearing court's determination.

At the outset we observe that the limited intrusion upon the defendant's person, i.e., the stop and frisk, was predicated on a reasonable suspicion of criminal activity, since the officers were clearly cognizant that a crime had occurred and their observations confirmed the information provided by the anonymous caller, including the presence of the defendant in a car at about 2:30 A.M. in an otherwise deserted portion of the street in close proximity to the scene of the crime, which had occurred only minutes before, as well as the defendant's statement that he was unaware of the incident which warranted the attention of several police cars and fire trucks *(see, People v Hicks,* 68 NY2d 234, 238; *People v Benjamin,* 51 NY2d 267, 270-271; *People v Milton,* 115 AD2d 666, 667).

The police action in frisking the defendant and transporting him to the hospital for a showup fell short of the level of intrusion upon the defendant that constitutes an arrest. As in *People v Hicks (supra,* at 240), the "[d]efendant was not handcuffed, there was no show of force * * * he was not taken to the police station, the total time and distance involved were very brief, he was told the specific, limited purpose of the detention, and no information was asked of him after the initial inquiry."

Rather, the detention, which included the transportation of the defendant to the hospital, was within the bounds of a lawful investigatory stop, as recently set forth by the Court of Appeals in *People v Hicks (supra; see, United States v Sharpe,* 470 US 675). We uphold the scope of the police action not only because it was a minimally intrusive means of investigation likely to expeditiously confirm or dispel reasonable suspicion, but also because the law enforcement officials knew that a crime had actually been committed, the total period of detention was less than 10 minutes, the hospital to which the defendant was transported and at which eyewitnesses were present was very close, and "there is no proof of significantly less intrusive means available to accomplish the same purpose" *(People v Hicks, supra,* at 243).

The initial statement made by the defendant upon his arrival at the hospital and his fortuitous viewing of Kilson being wheeled into surgery was properly admitted since it was not the product of an illegal detention, but was spontaneously uttered *(see, People v Stoesser,* 53 NY2d 648; *People v Lynes,* 49 NY2d 286). Moreover, the statement provided the probable cause for the defendant's subsequent arrest *(see, People v Gordon,* 87 AD2d 636, 637) and his subsequent statements were admissible since they were preceded by *Miranda* warnings and were clearly voluntary.

The defendant's remaining claim as to the prosecutor's improper elicitation of testimony regarding his criminal record is unpreserved for our review and, in any event, does not warrant reversal in the interest of justice in light of the overwhelming proof of guilt. Mangano, J. P., Bracken, Weinstein and Rubin, JJ., concur.